**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **YVES NADIE,** | **CIVIL ACTION** |
| Plaintiff, | |
| *v.* | **No. 25-3064-KSM** |
| **UNITED STATES OF AMERICA,** | |
| Defendant. | |

**MEMORANDUM**

**MARSTON, J.**                                                                          **May 12, 2026**

Conclusory allegations alone cannot defeat a motion for summary judgment.  Yet that is

exactly what pro se Plaintiff Yves Nadie asks the Court to do.  Plaintiff alleges that the United

States Postal Service ("USPS") damaged his mailbox and has failed to remediate the situation.

So, Nadie brings this lawsuit against Defendant United States of America ("United States")

asserting a claim for negligence under the Federal Tort Claims Act ("FTCA").  The United States

has filed a motion for summary judgment.  (Doc. No. 32.)  Plaintiff opposes the motion.  (Doc.

No. 34.)  For the reasons below, the Court grants the United States' motion.

**I.      BACKGROUND**

The relevant facts are as follows.[1]  On Wednesday, August 16, 2023, at 10:37 a.m., USPS

mail carrier Clayton Schroding ("Shroding") began his mail route for the day, which included

---

[1] Because Plaintiff failed to respond to the United States' Statement of Undisputed Facts, all material facts contained in it are deemed undisputed.  (*See* Doc. No. 18 at ¶ 6(c) (Scheduling Order) ("All material facts set forth in the Statement of Undisputed Facts served by the movant or in the Additional Statement of Undisputed Facts served by the respondent shall be deemed undisputed unless specifically controverted by the opposing party[.]"); Judge Marston's Policies and Procedures, Section II(B)(1)(c) (same).)  And, Plaintiff did not submit any Additional Statement of Undisputed Facts when he filed his opposition.

Plaintiff's home in Perkasie, Pennsylvania.  (Doc. No. 33 at ¶ 1; *see also* Doc. No. 33-1 at 2 ("I covered Rural Route #7 numerous times while the postal carrier assigned to the route, Joy Goodmond, was out on leave.").)  After completing his route, Shroding returned to the Perkasie Post Office at 3:39 p.m.  (Doc. No. 33 at ¶ 2.)  USPS policy mandates that all mail carriers submit a written report to their postmaster or supervisor following any automobile accident that occurs while they are on duty.  (*Id*. at ¶ 20.)  The report is due before the carrier goes off duty for the day.  (*Id.* at ¶ 21.)  No automobile accidents were reported on August 16, 2023, and Schroding attests that he did not hit or otherwise damage any mailboxes along his route that day.  (*Id.* at ¶¶ 3, 22; *see also* Doc. No. 33-1 at 3 ("While delivering mail that day, I did not hit or otherwise damage any mailboxes.").)

However, on August 16, 2023, at 4:56 p.m., Plaintiff called the police and claimed that a vehicle had hit and damaged his mailbox.  (Doc. No. 33 at ¶ 6.)  While he waited for an officer to arrive, Plaintiff called USPS to confirm that USPS had delivered mail to his home that day.  (*Id.* at ¶ 8.)  After learning USPS had delivered mail earlier that day, Plaintiff told USPS, "okay. Then I will come over there and put the claim (sic), because I feel that my mailbox has been hit by them."  (*Id.* at ¶ 9.)  Ten minutes later, at 5:06 p.m., Corporal James Thomas Browne ("Corporal Browne") arrived at Plaintiff's home.  (*Id.* at ¶ 7.)  Corporal Browne determined that the "entire mailbox unit swivels" and that the mailbox unit had "turned about 45 degrees from being perpendicular to the curb."  (*Id.* at ¶ 11.)  Plaintiff told Corporal Browne that he believed the mailbox had been struck about ten to fifteen minutes prior (between 4:40 and 4:45 p.m.) when Plaintiff had received a package.[2]  (*Id.* at ¶ 12.)

---

[2] Plaintiff did not produce any photographs or videos taken on August 16, 2023, depicting damage to his mailbox.  (Doc. No. 33 at ¶ 16.)  When asked about his initial suspicions about the incident during his deposition, Plaintiff suggested that an Amazon driver could have been the one to actually hit the mailbox, as an Amazon driver had been to his house "not even 10 minutes" before, and he stated that

According to Corporal Browne's police report, "the entire mailbox unit easily turned back into its proper position" and he "observed no visible damage to the mailbox" and "no evidence as to what may have struck it." (*Id.* at ¶¶ 13, 14.) Corporal Browne also determined that the "[t]he mailbox was upright, the door to the mailbox was intact and undamaged, and the mailbox was operational." (*Id.* at ¶ 15.) No further action was taken by Plaintiff that day, and Corporal Browne closed the case on August 16, 2023, at 5:17 p.m. (Doc. No. 33 at ¶ 16; *see also* Doc. No. 33-3 at 2 "CASE CLOSED").)

A day later, on August 17, 2023, Plaintiff went to his local post office and claimed that a USPS vehicle had hit and damaged his mailbox. (Doc. No. 33 at ¶ 19.) Even though no USPS accident report was filed on August 16, 2023, USPS temporary supervisor Kevin Ramirez ("Ramirez") went to Plaintiff's home on August 17, 2023, to inspect the alleged damage. (*Id.* at ¶ 23.) Ramirez found the mailbox in its proper position, facing the road. However, he noticed that the door to the mailbox was damaged, and he took a photo of the damage. (*Id.* at ¶¶ 25, 26.)[3] Ramirez then attempted to repair the mailbox door for Plaintiff. (*Id.* at ¶ 41.) After he left, the door, while stiff, was fully operational. (*Id.* at ¶ 42.) Ramirez took a photo of the repaired mailbox before he left Plaintiff's home. (*Id.* at ¶ 43.) Plaintiff contends that during this visit, Ramirez admitted that USPS was responsible for the damage to his mailbox. (*Id.* at ¶ 37.) Ramirez denies making such a statement, stating that he instead told Plaintiff "if USPS was responsible, [USPS] would take responsibility." (*Id.* at ¶¶ 38, 39.)

---

it could have "been a passenger with his own car . . ., and I went through everything in my head in a few seconds, I guess, to see who did that.") (Doc. No. 33-2; Nadie Dep. Tr. at 6:8–24; *see also* Doc. No. 33 at ¶¶ 17, 18.)

[3] When Corporal Browne was shown Ramirez's photo of the damage to the door of the mailbox, he stated that this damage "was not present when [he] observed the mailbox on August 16, 2023." (Doc. No. 33 at ¶ 28.)

While visiting Plaintiff's home on August 17, 2023, Ramirez drove the same vehicle that Shroding drove to deliver mail to Plaintiff's home on August 16, 2023. (*Id.* at ¶ 29.) In his deposition, Plaintiff suggested that on August 17, he observed the USPS vehicle from a distance and saw a "fresh," "heavy" scratch on the driver's side of the vehicle that "aligned" with his mailbox. (*Id.* at ¶ 30; Nadie Dep. Tr. at 4:4, 12–9.) Plaintiff did not take any photographs of the alleged scratch on the vehicle on August 17, and Ramirez does not recall seeing a scratch along the side of the vehicle. (Doc. No. 33 at ¶¶ 32, 33.) During his deposition, Plaintiff was shown a photo of the driver's side of the USPS vehicle in question, which was taken "in early October 2023 as part of a routine fleet inspection." (*Id.* at ¶ 33.) He testified at that time that he did not "see any scratch . . . on that picture that you're showing me . . . I don't see any scratch on it, on this vehicle." (*Id.* at ¶ 34.) From August 16, 2023 through October 2023, USPS has no record of any repair work performed on the vehicle that delivered mail to Plaintiff's house on August 16. (*Id.* at ¶ 33.)

Subsequently, Plaintiff continued to complain to USPS about his mailbox, which prompted Ramirez to return to Plaintiff's home on August 24, 2023. (*Id.* at ¶ 45.) Plaintiff was not present during this visit. (*Id.* at ¶ 47.) Ramirez again inspected the mailbox, found it to be fully operational, and took a photograph showing that it was functional. (*Id.* at ¶ 47.) Despite this, Plaintiff requested that USPS hold his mail at the post office for pick-up and USPS complied with his request. (*Id.* at ¶ 48.) USPS policy mandates that mail may only be held at a post office for 30 days, but, because Plaintiff continued to complain, USPS made an exception and held his mail for approximately five months. (*Id.* at ¶¶ 50, 51, 52.)

In January 2024, USPS mail carrier Joy Goodmond ("Goodmond") told Plaintiff that USPS was going to be resume delivering mail to his mailbox. (*Id.* at ¶ 52.) Plaintiff told

4

Goodmond that if USPS delivered mail to his mailbox, the door would come off.  (*Id.* at ¶ 53.)

Goodmond told Plaintiff that his only other option was to pay for a post office box.  (*Id.* at ¶ 54.)

At this point, Plaintiff agreed to resume home delivery and Goodmond began delivering mail to

Plaintiff's home in early 2024.  (*Id.* at ¶ 55.)  She was intentionally gentle with the mailbox door.

(*Id.* at ¶ 56.)  However, one day after work, she was driving through the neighborhood and saw

Plaintiff open his mailbox door aggressively.  (*Id.* at ¶ 58.)  After that observation, she noticed

the hinges on the mailbox door began to separate from the mailbox each time she made a

delivery.  (*Id.* at ¶ 59.)  On May 28, 2024, Goodmond noticed that mailbox door was completely

off.  She took a photo of the mailbox with its missing door.  (*Id.* at ¶ 60.)  In March 2025, almost

a year later, Plaintiff repaired the mailbox door.  (*Id.* at ¶ 61.)  On March 19, 2025, Goodmond

took a photograph of the repaired mailbox.  (*Id.* at ¶ 62; Doc. No. 33-7 at 10.)

## II.    PROCEDURAL HISTORY

On October 17, 2023, Plaintiff filed a complaint against USPS in Magisterial District

Court in Bucks County, Pennsylvania.  *See* 24cv4049, Doc. No. 1-3 at 5.  When USPS failed to

respond to his complaint, the state court entered default judgment against it on November 22,

2023.  *Id.* at 2.  USPS's Law Department notified the United States Attorney's Office of the

default judgment, and the United States, acting on USPS's behalf, removed the case to this Court

under 28 U.S.C. § 1442(a)(1) on August 8, 2024.  *Id.*, Doc. No. 1 at 1. The United States then

moved to substitute itself for the USPS (as the sole defendant), vacate the state court's judgment,

and dismiss the case for lack of subject matter jurisdiction.  *Id.*, Doc. No. 11.

On November 15, 2024, this Court granted the United States's motion, vacated the

default judgment, and dismissed Plaintiff's claims without prejudice for failure to exhaust his

administrative remedies. *Id.*, Doc. No. 14. In its Order, the Court advised Plaintiff that he may file a claim against the United States once he exhausted his administrative remedies. *Id.*

On November 18, 2024, Plaintiff filed an administrative claim with the USPS, alleging that on August 16, 2023, a USPS vehicle "damaged" and "compromised" his mailbox. (Doc. No. 33 at ¶¶ 63, 64.) To support his claim for damages, he attached photographs to his administrative claim that showed the door to his mailbox detached from the rest of the mailbox. (*Id.* at ¶ 65; *see also* Nadie Dep. Tr. at 5:1–9 ("I don't know when it came out . . . it was a point when I was away")). Plaintiff's claim was denied on May 5, 2025. (Doc. No. 33 at ¶ 66; Ex. 9.) Having properly exhausted his administrated remedies, Plaintiff timely filed this action on June 12, 2025. (Doc. No. 33 at ¶ 67; *see also* Doc. Nos. 11-1, 2.)[4]

Plaintiff brings a claim for negligence under the FTCA. (Doc. No. 2 at ¶¶ 14, 15.) He alleges that USPS employees were acting within the scope of their employment when the negligent act occurred, and that USPS's negligence caused him actual damages and continued disruption of his daily life. (*Id.*)

On September 19, 2025, the United States filed a partial motion to dismiss Plaintiff's claims for punitive and emotional distress damages (Doc. No. 11), which Plaintiff opposed. (Doc. No. 14.) On October 24, 2026, the Court granted the motion. (Doc. No. 23.) On November 3, 2025, Plaintiff filed an Amended Complaint, which the Court struck on November 5, 2025. (Doc. Nos. 26, 27.)[5] On November 7, 2026, the United States answered Plaintiff's

---

[4] The United States attached Nadie's administrative claim to its motion to dismiss as Exhibit 1. (Doc. No. 11-1.) The United States does not dispute that Nadie now has properly exhausted. (Doc. No. 11 at 7.)

[5] The Court struck Plaintiff's Amended Complaint because it was filed after the Court granted the United States's partial motion to dismiss and sought to bring claims for emotional distress, which the Court dismissed with prejudice in its October 24, 2026 Order. (Doc. No. 27.) Plaintiff's Amended Complaint included claims for gross negligence, fraudulent concealment and misrepresentation,

Complaint.  (Doc. No. 28.)  Following the close of discovery, the United States filed the instant motion for summary judgment (Doc. No. 32), which Plaintiff opposes (Doc. No. 34).  The United States filed a reply in support of their motion.  (Doc. No. 35.)  As the matter is fully briefed, it is ripe for resolution.

## III.    LEGAL STANDARD

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  A dispute is genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material if it "might affect the outcome of the suit under the governing law." *Id.* at 248.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quotation marks omitted); *see also id.* at 325 ("[T]he burden on the moving party may be discharged by 'showing' — that is, pointing out to the

---

intentional infliction of emotional distress, and deprivation of due process and property rights. (Doc. No. 26 at 3.)  He also sought to clarify that "this action is not brought under the Federal Tort Claims Act (FTCA)" as specified in his Complaint.  (*Id.*)  However, the Court declined to reward this "wait and see" approach of Plaintiff, who missed his deadline to amend his pleadings on October 15, 2026. (Doc. No. 27.)

district court — that there is an absence of evidence to support the nonmoving party's case."). After the moving party has met its burden, the nonmoving party is required to "designate specific facts showing that there is a genuine issue for trial." *Id.* at 323 (quotation marks omitted); *see also Matsushita Elec. Indus. Co.*, 475 U.S. at 586 ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." (footnote omitted)). "[U]nsupported assertions, conclusory allegations or mere suspicions" are insufficient to overcome a motion for summary judgment. *Schaar v. Lehigh Valley Health Servs., Inc.*, 732 F. Supp. 2d 490, 493 (E.D. Pa. 2010).

## IV.    DISCUSSION

Plaintiff brings a negligence claim under the FTCA for the alleged damage to his mailbox on August 16, 2023. (Doc. No. 2; *see also* Doc. No. 11-1 ("This is a formal administrative claim against the United States Postal Service (USPS) under the Federal Tort Claims Act[.]").) Both parties agree the FTCA waives the sovereign immunity of the United States for torts committed by "any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1); *see also id.* § 2674; *Sosa v. Alvarez-Machain*, 542 U.S. 692, 700 (2004) (stating that "[t]he FTCA 'was designed primarily to remove the sovereign immunity of the United States from suits in tort, with certain specific exceptions, to render the Defendants liable in tort as a private individual would be under like circumstances.'" (quoting *Richards v. United States*, 369 U.S. 1, 6 (1962))). The United States is the only proper defendant in an FTCA action. *See CNA v. United States*, 535 F.3d 132, 138 n.2 (3d Cir. 2008). As a defendant, the United States is

"entitled to assert any defense based upon judicial or legislative immunity which otherwise would have been available to the employee of the United States whose act or omission gave rise to the claim." 8 U.S.C. § 2674.

The FTCA holds the United States liable to the extent a private party could be held liable under similar circumstances "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. §§ 1346(b)(1), 2674; *see also F.D.I.C. v. Meyer*, 510 U.S. 471, 477–78 (1994) ("[T]he 'law of the place' means law of the State – the source of substantive liability under the FTCA."). Here, the alleged negligence took place in Pennsylvania; thus, Pennsylvania's substantive law controls. "To establish negligence under Pennsylvania law, a plaintiff must show that '(1) the defendant had a duty to conform to a certain standard of conduct; (2) the defendant breached that duty; (3) such breach caused the injury in question; and (4) the plaintiff incurred actual loss or damage.'" *Turturro v. United States*, 629 F. App'x 313, 320 (3d Cir. 2015) (quoting *Pyeritz v. Commonwealth*, 32 A.3d 687, 692 (Pa. 2011)).

The United States argues that Plaintiff's claim fails on the second element, breach. The USPS does not dispute that its employees have a duty to act reasonably when driving and delivering the mail, and further have a duty to report any accidents that may occur. But, here, because there is no evidence that demonstrates that a USPS vehicle damaged Plaintiff's mailbox on August 16, 2023. (Doc. No. 32 at 16.) *See Celotex Corp.*, 477 U.S. at 325 ("[T]he burden on the moving party may be discharged by 'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case."). The Court agrees with the United States that the record is devoid of any non-speculative record evidence of breach by USPS on August 16, 2023.

Tellingly, USPS policy requires that all accidents be reported, and USPS has no record of an alleged incident at Plaintiff's residence on August 16, 2023.  (Doc. No. 33 at ¶ 20.) Moreover, it is significant that Corporal Browne's police report from August 16, 2023, provides the following description:

> I met with Nadie who directed me to his mailbox which is solid construction to include the mailbox and post. He showed me how the entire unit was turned about 45 degrees from being perpendicular to the curb. He believes it occurred about ten to fifteen minutes ago when he received a package. I observed no visible damage to the mailbox and no evidence as to what may have struck it. It should be noted that the entire unit swivels as one unit and it swiveled back into position with no apparent damage. No further action was taken.

(Doc. No. 33-3 at 3 (emphasis added).)

This police report contradicts Plaintiff's core claim that a USPS vehicle struck and damaged his mailbox on August 16.  Corporal Browne observed "no apparent damage" when he arrived at Plaintiff's residence.  (*Id.*)  And, Corporal Browne testified that there was *no* damage to Plaintiff's mailbox door when he investigated Plaintiff's claim.  Further, the USPS vehicle that delivered mail to Plaintiff's residence on August 16 was already back at the post office at the time of the alleged incident.  Mail carrier Shroding completed his shift at 3:39 p.m.—almost an hour before the 4:40 to 4:45 p.m. timeframe when Plaintiff alleges the incident occurred.  (*Id.*; *see also* Doc. No. 33 at ¶¶ 2, 12; Doc. No. 33-4 ("Arrived 17:06").)  Plaintiff also acknowledged in his deposition that he initially thought that the incident may have been caused by "a passenger with his own car" or "an Amazon driver."  (*Id.* at ¶18; *see also* Nadie Dep. Tr. 53:8–21.)

As the United States has met its burden, Plaintiff must now offer or point to concrete record evidence to show that USPS damaged his mailbox.  *See Allen v. United States*, No. 24cv00099, 2025 WL 35468, at *5 (E.D. Pa. Jan. 3, 2025) ("[O]nce the Government has met its initial burden, Plaintiff must point to record evidence for each element of h[is] claim.").  Plaintiff

argues that summary judgment should be denied for the following reasons:  (1) Plaintiff allegedly took photographs on August 16, 2023, that show a detached mailbox door; (2) a state court "previously found [USPS] responsible for the incident"; (3) there are "inconsistencies" in the record and in USPS witness statements; (4) the United States tried to restrict his access to discovery; and (5) the United States' motion for summary judgment only relies on "circumstantial evidence."  (*See* Doc. No. 34.)  But as the Court details below, none of these arguments are supported by the "concrete record evidence" required to defeat the motion for summary judgment.  *Celotex Corp.*, 477 U.S. at 323.

First, Plaintiff asserts in his response, without evidence, that he took a photograph on August 16, 2023, which shows a detached mailbox.  (Doc. No. 34 at 2.)  However, Plaintiff's responses to the United States' interrogatories contradict this statement.  (*See* Doc. No. 35-1 at 3 ("Q: What date(s) were the photographs you produced to the United States taken? A: <u>In 2024.</u>").) (emphasis added.)  During Plaintiff's deposition, he also testified that his mailbox door came off *after* USPS resumed delivery to his mailbox, after which he "immediately" photographed the damage.  (Doc. No. 35 at 5; *see also* Nadie Dep. Tr. at 5:12-22)  USPS resumed delivery to his mailbox in 2024.  (Doc. No. 33-7 ("I began delivering mail to Mr. Nadie's home again in early 2024.")).  This chronology is also reflected by additional record evidence, such as Goodmond's declaration that the door became detached on <u>May 28, 2024</u> (Doc. No. 33 at ¶ 60), and Corporal Browne's declaration that when he arrived at Plaintiff's home on August 16, 2023, "the door to the mailbox appeared intact and undamaged" (*id.* at ¶¶ 6, 7, 10, 15) (emphasis added).  As such, without more, no reasonable jury could conclude that Plaintiff's mailbox door came off on August 16, 2023.  (Doc. No. 35 at 6.)

11

Second, Plaintiff contends that summary judgment should be denied because "a Pennsylvania state court previously found the United States Postal Service responsible for the incident involving Plaintiff's mailbox." (Doc. No. 34 at 9.)  Plaintiff is correct that the Magisterial District Court of Bucks County, Pennsylvania, entered a default judgment against USPS after Plaintiff *improperly* filed his negligence claim with that court. (Doc. No. 34 at 9.) However, as Plaintiff is well aware, this Court vacated that default judgment after finding that the state court reached the default judgment in error.[6]  *See* Case No. 24cv4049, Doc. Nos. 13, 14 (E.D. Pa.).

Third, Plaintiff tries to point out what he views as "false statements" in the record.[7] (Doc. No. 34 at 5.)  He asserts that "USPS supervisor Kevin Ramirez provided inconsistent accounts regarding the incident" and that he intends to request that the Court order footage from the post office that day to corroborate his view.[8] (Doc. No. 34 at 3.)  Plaintiff also argues,

---

[6] Nadie sued USPS based on an alleged tort committed by a USPS driver. The FTCA thus applies, and it grants federal district courts "exclusive jurisdiction" to hear such claims. *CNA v. United States*, 535 F.3d 132, 140 (3d Cir. 2008), as amended (Sept. 29, 2008).  In light of this provision, "the state court clearly lacked jurisdiction to enter the default judgment." *Marks v. Blount-Lee*, No. 16cv3524, 2017 WL 3098094 at *3 (E.D.N.Y. July 20, 2017).  This jurisdictional error in the state court's entry of default judgment constitutes a 'mistake' under Rule 60(b)(1)." (Doc. No. 13 at 6.)

[7] Plaintiff also argues these alleged false statements create credibility determinations cannot be decided at summary judgment. (Doc. No. 34 at 7.) Plaintiff is correct that "[f]ederal courts . . . may not weigh evidence or determine credibility when ruling on summary judgment motions." (Doc. No. 34 at 7); *see e.g., Smith v. CGU*, 179 F. Supp. 2d 425, 432 (M.D. Pa. 2001) ("In any case like this one where operative facts are determinative of the outcome, credibility is always an issue.  We agree with the Plaintiff's assertion that the witnesses [sic] credibility is very important.").  But, in order to defeat summary judgment, Plaintiff must offer contradicted testimony or evidence via affidavits or other means to rebut Defendant's record evidence—which he has not done. *See id.* ("[W]e look to the record and note while some of the witnesses did not appear to be the most credible ones to come before this Court, their testimony was not contradicted by any additional testimony or evidence presented by the Plaintiff. Because their testimony remains uncontradicted, and no other testimony was presented, a jury would be left with no evidence on which to base the kind of verdict the Plaintiff seeks.  The law prevents such speculation by a jury, and requires that any verdict be supported by factual evidence.")

[8] Plaintiff asserts in his opposition that "Mr. Ramirez provided Plaintiff with his phone number and acknowledged the USPS vehicle had struck the mailbox. The interaction occurred in the presence of other postal employees who remain potential witnesses. The Defendant's current attempt to deny those

without any evidence of his own, that the statements made by mail carrier Joy Goodmond are "false," that he "does not recall any conversation regarding paying for a P.O. box," that he "never requested that USPS hold his mail or later resume delivery," and that Ramirez "advised Plaintiff not to contact neighbors regarding video surveillance footage." (Doc. No. 34 at 5.) However, "unsupported assertions, conclusory allegations or mere suspicions" are insufficient to overcome a motion for summary judgment. *Schaar v. Lehigh Valley Health Servs., Inc.*, 732 F. Supp. 2d 490, 493 (E.D. Pa. 2010). The assertions by Plaintiff are just that; none of them by Plaintiff are supported by record evidence.[9]

Fourth, Plaintiff asserts that the United States tried to "restrict" his ability to locate witnesses during discovery by requesting that he provide "social media communications intended to locate witnesses before posing them publicly." (Doc. No. 34 at 3.) However, in its reply brief, the United States refutes this assertion with record evidence. (Doc. No. 35-3.) On November 3, 2025, Plaintiff informed the United States via email that he would "soon be posting on Nextdoor" to ask "any neighbors who may have witnessed the hit-and-run, or who may still have pictures or vides of the incident, to come forward." (Doc. No. 35-3 at 2.) The United States responded by email asking Plaintiff to produce the post and any comments or messages he received. (Doc. No. 35-3 at 3–4.) When Plaintiff did not reply to the email, on November 5,

---

statements raises significant credibility issues that must be resolved by the trier of fact." (Doc. No. 34 at 4.) But as noted above, *see supra* n. 7, Plaintiff "may not prevail merely by discrediting [the] credibility of movant's evidence and must produce some affirmative evidence", which he has not done in his opposition. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358 (3d Cir. 1992).

[9] Plaintiff also asserts that "Plaintiff and his sister spent significant time and resources traveling repeatedly to the post office seeking a repair of the damaged mailbox" and that "[d]espite repeated requests, [] USPS failed to correct the issue for an extended period, causing unnecessary convenience and financial burden." (Doc. No. 33 at 34.) Again, Plaintiff cannot "solely rest upon [his] allegations" at summary judgment. *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

2025, the United States followed up with a letter. (*See* Doc. No. 35-4.) During the course of discovery, Plaintiff did not produce any social media posts and during his deposition, he stated that he did not post any statements to social media regarding his claim. (Doc. No. 35 at 8.) Thus, there is nothing to suggest that the United States restricted Plaintiff's access to discovery.[10]

Last, Plaintiff argues that circumstantial evidence in this case creates a genuine dispute of material fact. (Doc. No. 34 at 8.) He points to (1) the mailbox being swiveled and displaced shortly after USPS mail delivery on August 16, 2023; (2) the immediate police report following the incident; (3) USPS inspection of the mailbox and the vehicle shortly afterward; (4) statements made by USPS personnel at the time of the incident; and (5) the subsequent deterioration of the mailbox following the incident. (*Id.*) Here, Plaintiff cannot defeat summary judgment by asserting nonspecific challenges to the record before the Court, which includes a police report, numerous affidavits from USPS employees, Plaintiff's deposition, and photos, all of which together fail to establish that a USPS vehicle damaged Plaintiff's mailbox on August 16, 2023. Plaintiff has not put forth any evidence, beyond mere conclusory allegations to support his claim and he cannot rely on these "mere allegations, general denials," and "vague statements." *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991). It is insufficient for Plaintiff to attest "that a jury might disbelieve an opponent's affidavit" or discredit an opponent's

---

[10] This argument appears to be another attempt to reopen discovery. Plaintiff also asks "that the Court order the release of the police body-camera footage from the officers who responded to the scene on August 16, 2023. This footage will provide an objective record of the condition of the mailbox and the statements made at the scene." (Doc. No. 34 at 2.) Additionally, he states that he "intends to request that the Court order the surveillance footage from the post office facility on the day that Plaintiff visited the post office to report the incident" which he argues would show him reporting the incident, Ramirez inspecting the postal vehicle, and statements made by Ramirez in the presence of other postal employees. (*Id.* at 4.) However, at this stage, "[d]iscovery has closed and Plaintiff cannot defeat summary judgment based on unsupported speculation or assumptions that additional evidence exists". *See Parker v. Sch. Dist. of Philadelphia,* 823 F. App'x 68, 72 (3d Cir. 2020) ("[A] litigant cannot rely on . . . speculation [or]. . . unsupported assumptions . . . to create a genuine dispute of material fact[.]"). If Plaintiff had an issue during the course of discovery, he should have raised it with the Court at that time.

testimony without offering affirmative evidence of his own. *Williams v. Borough of W. Chester, Pa.*, 891 F.2d 458, 460 (3d Cir. 1989).

Because Plaintiff has not met his burden as to USPS's breach, summary judgment must be entered, and the Court need not address the additional elements of causation and actual damages. "Judgment will be entered against a party who fails to sufficiently establish any element essential to that party's case and who bears the ultimate burden of proof at trial." *Weiser Law Firm, P.C. v. Hartlieb*, 665 F. Supp. 3d 647, 658 (E.D. Pa. 2023).

## V.    CONCLUSION

For these reasons, the Court grants the United States' motion for summary judgment. An appropriate Order follows.

15